UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TERYL GENE WATTENBURGER, | No. CV-11-05008-JPH |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are plaintiff's Motion for Summary Judgment, ECF No. 14, and defendant's Motion for Summary Judgment, ECF No. 16, noted for hearing on June 22, 2012, without argument, ECF No. 12.

### I. JURISDICTION

Teryl G. Wattenburger, plaintiff, applied for Title II Disability Insurance Benefits ("DIB") on December 21, 2007. The application was denied initially and on reconsideration. Plaintiff requested a hearing, which was held on November 10, 2009, before Administrative Law Judge ("ALJ") Michael S. Hertzig. Plaintiff, represented by counsel, appeared and testified. On January 22, 2010, the ALJ issued a decision denying benefits. The Appeals Council denied a

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 1**

request for review, and the ALJ's decision became the final decision of the Commissioner. This decision is appealable to the district court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, and the plaintiff's and defendant's briefs. Therefore, they will only be summarized here. At the time of the administrative hearings, plaintiff was 43 years old. He has a 12th grade education, and has worked as a sheet metal worker and as a sheet metal supervisor. Plaintiff alleges disability since October 31, 2007, due to myasthenia gravis, a neuromuscular disease which can lead to fluctuating muscle weakness and fatigue. Plaintiff's date last insured for DIB is December 31, 2011.

## III. STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence, 42 U.S.C. § 405(g)...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 2**

supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989), quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## IV. ISSUES

Plaintiff alleges the ALJ erred in improperly rejecting the opinions of his treating neurologist, Dr. Clarence Washington, M.D.; that he erred in failing to fully and fairly develop the record; and that he erred in failing to meet his burden to identify specific jobs, available in significant numbers, which plaintiff could perform in light of his specific functional limitations, ECF No. 15 at 8.

Defendant responds that the ALJ's rejection of Dr. Washington's opinions was proper; that the record was fully and fairly developed and that its duty to develop it further was not triggered; and that it satisfied its burden of identifying specific jobs which plaintiff could perform, ECF No. 17 at 7-18.

///

///

## V. DISCUSSION

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 3**

**A. SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If he is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively

presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B. ALJ'S FINDINGS**

At step one, the ALJ found plaintiff met the insured status requirements of the Social Security Act through December 31, 2011, and he had not engaged in substantial gainful activity since October 31, 2007, the alleged onset date (Tr. at 11). At step two, the ALJ found plaintiff's myasthenia gravis was a "severe impairment." At step three, the ALJ found plaintiff's impairment or combination of impairments did not meet or equal a listed impairment (*Id.*). Prior to step four, the ALJ found plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work (Tr. at 12). At step four, the ALJ found the demands of plaintiff's

past relevant work as a sheet metal worker supervisor exceeded his RFC, and he could not perform his past work (Tr. at 16). At step five, the ALJ determined because plaintiff could perform the full range of light work, Grid rule 202.21 directs a finding of "not disabled" (Tr. at 16-17).

**C. IMPROPER REJECTION OF TREATING PHYSICIAN'S OPINION**

If a treating doctor's opinion is uncontroverted, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Treating physicians' subjective judgments are important, and "properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

However, "[although] a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Further, "[t]he ALJ need not accept an opinion of a physician – even a treating physician – if it is conclusionary and brief and is unsupported by clinical findings." *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). This includes check-off forms where no explanation for a physician's conclusions are given. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).

Plaintiff alleges the ALJ erred in not giving Dr. Washington's medical opinion controlling weight, which resulted in an erroneous RFC determination and ultimate finding of nondisability, ECF No. 15 at 13-16. Plaintiff alleges he sufficiently demonstrated a need for one and a ha1f to two hours of recumbency per day, the ALJ should have included this limitation

in his RFC, and erred when he found plaintiff has the ability to perform the full range of light work. *Id*. Plaintiff relies on various medical reports and treatment notes by Dr. Washington between 2002 and 2009; a November 26, 2007 letter in which Dr. Washington states plaintiff is "totally disabled" (Tr. at 208); and a November 2, 2009 check-box form given to Washington by plaintiff's counsel, indicating Washington's agreement that plaintiff (1) needed to be recumbent for 1 ½ to two hours per day, and (2) was not capable of performing *any* type of full-time work (Tr. at 382-83) (emphasis in original). Plaintiff further asserts that, while the record does not indicate any need for recumency, it is "replete with notations of [plaintiff's] chronic fatigue arising from his myasthenia gravis." *Id*.

Defendant responds that the ALJ properly accorded the November 2007 letter no weight because the determination of disability is not a medical opinion, but a vocational one reserved for the Commissioner, ECF No. 17 at 8. Additionally, defendant notes the letter provides no objective support for its statement, and Dr. Washington's own records are not consistent with this opinion. *Id*. Regarding the November 2009 check-box form, defendant responds that it was properly accorded little weight because no explanation was given for the basis of Dr. Washington's agreement, and the limitations with which Dr. Washington agreed were not consistent with his medical reports and treatment notes. *Id*. Lastly, defendant states the check-box form was given little weight because the questions, phrasing, and limitations were drafted by plaintiff's counsel and provided to Dr. Washington (Tr. at 14). Ultimately, defendant asserts the ALJ found insufficient evidence of a need for recumency in the medical record, meaning the check-box form was not entitled to controlling weight. *Id*.

For the Court to find the ALJ erred in according little or no weight to Dr. Washington's

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT - 7**

November 2007 letter and November 2009 check-box form, it must find the ALJ erroneously ignored substantial evidence in plaintiff's medical records which supports Dr. Washington's assertion plaintiff is "totally disabled" and requires 1 ½ to two hours of recumbency during the workday. Dr. Washington's medical reports and treatment notes with respect to plaintiff's claims of "total disability" and need for recumbency include:

● November 4, 2002: Plaintiff "may have a little fatigue in his upper extremities with certain physical activities, otherwise he has no complaints" (Tr. at 246).

● April 7, 2003: "He has noted a significant increase in generalized weakness associated with the upper respiratory tract infection" (Tr. at 245).

● Mar 26, 2003: "General weakness is noted by complaint but not documented by examination" (Tr. at 245).

● April 21, 2003: Plaintiff "is having a lot of problems" (Tr. at 244).

● March 3, 2004: Plaintiff should "[c]onsider a career change as far as his work situation" (Tr. at 236).

● April 1, 2004: "Wife called, stated he has been feeling bad for the past 3 days, feels slow, and his words come out 'like he's drunk,' advised her to take him to the ER" (Tr. at 235).

● May 4, 2004: "He has been recently hospitalized for bilateral pneumonia at Kennewick General Hospital and was treated appropriately for that and has returned to work" (Tr. at 234).

● October 15, 2004: "The patient comes today with a new complaint of musculoskeletal pain in the lower extremities. He is doing well on his current myasthenia medication" (Tr. at 232).

● January 20, 2006: "The patient describes symptoms of hypoglycemia and also he has had some copopedal spasm" (Tr. at 224).

● May 10, 2006: "He remains stable. He has paced himself. He is trying to continue working on a daily basis, but with time it is becoming more difficult" (Tr. at 220).

● November 15, 2006: "The patient does well most of the time. He does feel that his

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 8**

medicine may not be lasting six hours between doses and he finds himself giving out before the next dose of medicine. Today I did suggest to him the possibility of increasing the frequency of the medicine to see if that will solve his problem so he can function better during the daytime" (Tr. at 217).

● July 2, 2007: "The patient is having more difficulty with the activities of daily living. His job is overwhelming and he is not able to keep up with the rest of the men on the job. They have given him light duty to do, but that is not always available, and he is finding himself having more symptoms of myasthenia. I suggested to the patient that he consider applying for disability, primarily because with time and age it is unlikely that he is going to get better, and if he is unable to do his job, then he will be terminated" (Tr. at 212).

● January 19, 2009: "He has had no major setbacks or experienced any change in his condition. He is able to do about 80% of normal daily activities without running out of energy. Because of the myasthenia, he had to quit his full-time employment and now works on a part-time basis, and if he paces himself correctly, he can make it through the day... The patient is stable. He needs to continue with his current medicines" (Tr. at 374-377).

● March 16, 2009: "His ability to function waxes and wanes. For the most part he is stable and taking his medications on a regular basis without any side effects or change in his condition" (Tr. at 374).

● August 31, 2009: "He is stable on [his medication]. He is doing most of the activities of daily living that he would like but he notes that his energy level is limited and he runs out of energy" (Tr. at 373).

It is worth noting that on various dates throughout Dr. Washington's treatment record, plaintiff's condition is described as "stable" (Tr. at 209, 211, 212-15, 216, 218, 220, 225, 231, 233, 235, 240, 241, 242, 243, 244, 246, 373, 374-77, 378, 379); plaintiff is doing "reasonably well" (Tr. at 210, 219, 230, 380); has "no complaints," is "without complaints," or is "without major complaints" (Tr. at 210, 216, 219, 230, 231, 233, 235, 240, 242, 245, 246, 378, 379, 380).

Plaintiff alleges the record is "replete" with descriptions of "chronic fatigue," which supports the need for recumbency, ECF No. 15 at 15. The Court agrees there is some indication plaintiff suffers from fatigue. However, the record as a whole does not clearly establish

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT - 9**

sufficiently chronic fatigue, or a clear need for recumbency, as plaintiff alleges. The ALJ correctly concluded the record was inconsistent with Dr. Washington's November 2009 check-box form opinion. Nowhere in the record does Dr. Washington indicate plaintiff must be recumbent for 1 ½ to two hours per day – in fact, the record seems to indicate that throughout Dr. Washington's treatment, adjustments in the level of medication appeared to alleviate a majority if not all plaintiff's complaints.

Further, Dr. Washington's check-box indication plaintiff is incapable of doing *any* work is at odds with various parts of the medical record including Dr. Washington's treatment notes. Dr. Washington indicates in January 2009, more than a year after onset, plaintiff was able to work part-time (Tr. at 374-77); elsewhere, he states plaintiff can do between 80 and 90% of a normal day's activities (*Id*., Tr. at 229). Such observations are not consistent with Dr. Washington's opinion plaintiff cannot do *any* work whatsoever. Additionally, Dr. Washington indicated the only problem with plaintiff being assigned light duty is that there simply is not enough of it at plaintiff's former place of employment (Tr. at 212). While this appears, in fact, consistent with the ALJ's RFC determination, it is undeniably inconsistent with Dr. Washington's assertion plaintiff can do no work whatsoever, and is a convincing reason for the ALJ to reject the opinion.

Regarding Dr. Washington's November 2007 letter stating plaintiff was "totally disabled," defendant correctly asserts such a conclusion is not binding on an ALJ. Moreover, the ALJ stated clear and convincing reasons for not according it any weight. Not only was the letter unaccompanied by any objective support, but a description of the plaintiff as "totally disabled" appears at odds with Dr. Washington's descriptions of plaintiff around the time of the letter as

"stable" (Tr. at 209, 379), "doing reasonably well" (Tr. at 380), and able to complete a shift of part-time work (Tr. at 374-77). In fact, Dr. Washington's treatment notes appear to better corroborate the ALJ's RFC for light work, as the November 2007 letter specifically notes only that plaintiff "can no longer perform the duties of his past position" (Tr. at 208), while saying nothing about whether he is able to do any other kind of work.

After considering plaintiff's and defendant's briefs, the record, and the ALJ's findings, the Court finds the ALJ's reasons for giving no weight to Dr. Washington's November 2007 letter and November 2009 check-box form are clear, convincing, and supported by substantial evidence. The ALJ is not required to credit opinions that are conclusory, brief, and unsupported by clinical findings; nor is he required to credit internally inconsistent opinions. *See e.g., Matney,* 981 F.2d at 1019; *Tomasetti v. Astrue*, 522 F.3d 1035, 1041 (9th Cir. 2008). The ALJ correctly found Dr. Washington's opinion plaintiff required recumbency and was totally disabled were not supported by the record.

**D. ALJ'S DUTY TO FURTHER DEVELOP THE RECORD**

When reviewing an appeal of a denial of disability benefits, an ALJ has a duty to develop the record, "to assure that the claimant's interests are considered." *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983). This duty is triggered when the evidence is ambiguous, the ALJ finds that the record is inadequate, or the ALJ relies on an expert's conclusion that the evidence is ambiguous. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Plaintiff alleges the ALJ erred in not further developing the record, specifically regarding plaintiff's need for recumbency and Dr. Washington's "frequent notation of [plaintiff's] condition being stable when the records [*sic*] also shows [*sic*] adverse situations," ECF No. 15 at

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT - 11**

18. Plaintiff alleges these issues were ambiguous and required further investigation to adequately address. *Id*.

Defendant responds that "[p]laintiff's assertion has no merit because the medical evidence was not ambiguous, as there was no evidence that any doctor recommended to [plaintiff] that he lie down for one to two hours a day," ECF No. 17 at 13. Further, defendant asserts that the evidence regarding plaintiff's relatively stable condition, as noted by Dr. Washington, is also not ambiguous. "[T]he medical record of evidence demonstrated that [plaintiff's] condition waxed and waned, occasionally exacerbated by bronchial infections ... In fact, although an occasional treatment note reflected [plaintiff's] general complaints of difficulty with activities of daily living, there was ample evidence that [plaintiff] was able to perform from 80% of his normal daily activities to all of his daily activities with no restrictions." *Id*.

*Webb*, 433 F.3d at 687, indicates the duty to develop the record begins when either the evidence is ambiguous or the ALJ determines the record is inadequate (since there was no reliance on an expert, we do not consider the third step). The Court finds the evidence regarding the need for recumbency is not ambiguous – nowhere in the record is recumbency mentioned or prescribed by a treating or examining physician, nor does plaintiff complain to providers he needs to lie down. While the Court acknowledges there is some evidence plaintiff suffers from fatigue, this does not support a finding that the record required further development. The Court finds the evidence was not ambiguous in the sense it was sufficient for the ALJ to make a disability determination, and the evidence is sufficient to support the ALJ's decision. Further, the determination as to whether the record is inadequate is within the ALJ's discretion. *Id*. The Court finds the record was fully and fairly developed, and the duty to develop it further was not

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 12**

triggered.

## E. ALJ'S FAILURE TO IDENTIFY SPECIFIC JOBS CONSISTENT WITH CLAIMANT'S SPECIFIC FUNCTIONAL LIMITATIONS

Once the sequential analysis reaches the fifth step, in order to support a conclusion that a claimant is not disabled, the burden shifts to the Commissioner, who must provide evidence that demonstrates other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity. *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1987). The ALJ may meet this burden in two ways: by reference to the Medical-Vocational Guidelines (the "Grid Rules"), at 20 C.F.R. pt. 404, subpt. P, app. 2, or by the testimony of a vocational expert if the grid rules do not apply because the claimant's limitations are non-exertional in addition to or instead of exertional. *See Tackett v, Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

After an ALJ determines a claimant's RFC, he factors this in with the claimant's age and skill set, and uses the grid rules, when applicable, to determine whether or not the claimant is disabled. 20 C.F.R. pt. 404, subpt. P, app. 2. An ALJ's use of these rules includes administrative notice of the numbers of unskilled jobs that exist throughout the national economy at various functional levels, as described by the *Dictionary of Occupational Titles*. 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(b); 20 C.F.R. § 404.1566(d). If that particular claimant has limitations which the grid rules do not address, the testimony of a vocational expert is used to determine what jobs are available for that claimant. *Polny v. Bowen*, 864 F.2d 661 (9th Cir. 1988).

Plaintiff alleges defendant has not satisfied his burden of identifying specific jobs within the national economy that plaintiff can do, ECF No. 15 at 20. Plaintiff alleges using the grid

**ORDER GRANTING DEFENDANT'S  
MOTION FOR SUMMARY JUDGMENT - 13**

rules was error, because they require that a claimant must be able to perform the full range of jobs in a given category (sedentary work, light work, etc.) and do not take into account non-exertional limitations. *Id*. at 19. Plaintiff alleges because pain and fatigue are non-exertional limitations, the ALJ erred by relying on the grid rules to find him not disabled. *Id*. Plaintiff alleges the ALJ should have used the testimony of a vocational expert to determine appropriate jobs for plaintiff, and because he did not, he has not satisfied his burden of specifying jobs plaintiff can do given his specific limitations. *Id*. at 20.

Defendant asserts the ALJ reasonably found the evidence supports plaintiff's RFC for the full range of light work, ECF No. 17 at 15. Defendant asserts the RFC assessment, combined with the other factors used within the grid rules, reasonably warranted a determination of "not disabled," and use of the grid rules necessarily includes administrative notice of jobs claimants with plaintiff's RFC can do. *Id*. Defendant asserts because plaintiff has not challenged the ALJ's RFC assessment he cannot challenge the use of the grid rules to determine plaintiff is not disabled. *Id*. at 17. Defendant also notes the functional capacity to perform the full range of light work includes the capacity to perform sedentary work as well. *Id*. at 16. He further notes that "[a]pproximately 1,600 separate sedentary and light unskilled occupations can be identified ... each occupation representing numerous jobs in the national economy." *Id*., citing 20 C.F.R. pt. 404, subpt. P, app.2 § 202.00(a). Therefore, defendant asserts, his burden has been satisfied. *Id.* at 20.

The Court partially disagrees. Plaintiff challenged the ALJ's RFC assessment by alleging the ALJ failed to properly weigh Dr. Washington's opinions, meaning he disputes the RFC assessment; however, as indicated, the ALJ properly weighed the evidence. To the extent he

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT - 14**

again argues, in the context of step five, that he *cannot* do the full range of light work, the argument has been rejected.

The ALJ's RFC for the full range of light work (which, the Court notes, includes non-exertional sedentary work) is supported by the record. Accordingly, the ALJ properly relied on Grid Rule 202.21 to determine plaintiff was "not disabled." The ALJ satisfied his burden of specifying jobs plaintiff may do given his specific limitations. The grid rule includes administrative notice of approximately 1,600 jobs that plaintiff's RFC indicates he could potentially perform (including those within both the light and sedentary categories). As such, the Court finds defendant has satisfied his step five burden.

## VI. CONCLUSION

Having reviewed the record and the ALJ's conclusions, the Court finds the ALJ's decision is free of legal error and supported by substantial evidence.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is **GRANTED**.

3. The Commissioner's decision denying benefits is **AFFIRMED**.

The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide copies to counsel, and **CLOSE** this file.

DATED this 11th day of July, 2012.

                                          s/ James P. Hutton
                                          JAMES P. HUTTON
                                    UNITED STATES MAGISTRATE JUDGE

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 15**